**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-00301-DME-CBS

ALCOHOL MONITORING SYSTEMS, INC., a Colorado Corporation,

    Plaintiff/Counterclaim-Defendant,

vs.

BI INCORPORATED, a Colorado Corporation,

    Defendant/Counterclaim-Plaintiff,

and

GEO CARE, INC., a Florida Corporation,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART ALCOHOL
MONITORING SYSTEMS, INC.'S MOTION TO ALTER OR AMEND
PURSUANT TO FED. R. CIV. P. 59(e)**

---

Before the Court is Plaintiff Alcohol Monitoring Systems, Inc.'s ("AMS's") Motion to Alter or Amend Pursuant to Fed. R. Civ. P. 59(e) (the "Motion," Doc. 168.) The Court previously granted summary judgment to Defendants BI Incorporated ("BI") and Geo Care, Inc. on Plaintiff's patent infringement claims. For the reasons discussed below, the Court GRANTS in part and DENIES in part Plaintiff's Motion.

## I. RELEVANT BACKGROUND

Plaintiff AMS claims that Defendants' BI TAD system infringes AMS's patents, U.S. Patent Nos. 7,462,149 ("the '149 patent"), and 7,641,611 ("the '611 patent").[1]

---

[1] Claim 1 of the '149 patent reads as follows (United States Patent No. 7,462,149, Doc. 137-1, Col. 16, l. 51-Col. 17, l. 18):

A system for continuous remote blood alcohol monitoring of a human subject comprising:

a monitor device adapted to be attached to the human subject, wherein said monitor device takes a plurality of transdermal alcohol concentration readings at predetermined time intervals according to a first schedule stored in a first memory in said monitor device without active participation by the human subject, wherein said plurality of transdermal alcohol concentration readings are stored in said first memory;

a modem in communication with said monitor device, wherein said plurality of transdermal alcohol concentration readings stored in said first memory are communicated from said monitor device to said modem at predetermined time intervals according to said first schedule through radio frequency signals without active participation by the human subject, wherein said plurality of transdermal alcohol concentration readings are stored in a second memory in said modem;

a monitor network in communication with said modem, wherein said plurality of transdermal alcohol concentration readings stored in said second memory are communicated from said modem to said monitor network at predetermined time intervals according to a second schedule stored in said second memory through a first communication link without active participation by the human subject, and further wherein said monitor network analyzes said plurality of transdermal alcohol concentration readings to determine if an alert condition exists;

and a supervising agency in communication with said monitor network, wherein said monitor network communicates an alert to said supervising agency through a second communication link when said alert condition exists.

Claim 1 of the '611 patent reads as follows (United States Patent No. 7,641,611, Doc. 137-3, Col. 16, l. 51-Col. 17, l. 18):

AMS's two patents at issue here describe devices that attach to a person's leg to detect alcohol consumption as indicated by the person's transdermal emissions, along with the associated networks through which such data are transmitted, analyzed, and reported. At

---

A monitor network for use with a modem and a continuous remote blood alcohol monitoring device adapted to be attached to a human subject, the monitor network comprising:

 a communication server, wherein said communication server receives raw data over a communication link from the modem, wherein said raw data is gathered by the continuous remote blood alcohol monitoring device adapted to be attached to the subject and transmitted to the modem;

 a situation analyzer connectable to said communication server, wherein said situation analyzer parses said raw data through a predetermined set of rules into a plurality of messages;

 a workflow instructions connectable to said situation analyzer, wherein said situation analyzer queries said workflow instructions and a historical data relating to similar said plurality of messages for an action to be applied to each of said plurality of messages;

 a supervising agency/subject database connectable to said situation analyzer for storing said raw data, for storing information on the human subject, a supervising agency, and a supervising person monitoring the human subject, and for storing a predetermined notification method by said supervising person;

 and a notification server connectable to said situation analyzer, wherein when said situation analyzer determines that said action to be applied to one of said plurality of messages requires an immediate notification of said supervising person, said situation analyzer will communicate said one of said plurality of messages to said notification server, and further wherein said notification server queries said supervising agency/subject database to determine said predetermined notification method, and executes said predetermined notification method to communicate one of said plurality of messages to said supervising person.

3

the June 2012 Markman[2] hearing, the Court heard argument regarding claim construction of the '149 and '611 patents. The Court entered an order construing the claims on June 20, 2012 (the "Markman Order," Doc. 117.) On December 19, 2013, the Court issued an Order Granting Summary Judgment on Patents '149 and '611 and Granting Motion for Partial Summary Judgment on Validity of the '149 Patent (the "Order," Doc. 160), which granted Defendants summary judgment. The court now rules on Plaintiff's Motion, having reviewed the record, the applicable law, and the arguments made in the parties' briefs.

## II. DISCUSSION

According to AMS, "[t]he Final Judgment should be reconsidered because it misapprehends arguments and facts, includes clear error in claim construction and deprives AMS of Due Process or improperly ignores genuine issues of material fact." (Doc. 168 at 1.) Although the Court concludes that a clarification in the use of one word in its Order is warranted for the '611 patent, the Court denies the remainder of Plaintiff's claims under the well-established rule that Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127–128 (2d ed.1995)).

---

[2] See Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

### A. Legal standard - Motion to Alter or Amend Pursuant to Fed. R. Civ. P. 59(e)

Grounds warranting relief under Fed. R. Civ. P. 59(e) "include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). "In determining whether to grant or deny a Rule 59(e) motion to alter or amend the judgment, the district court is vested with considerable discretion." Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1332 (10th Cir. 1996).

Throughout its motion, AMS attempts to raise matters that it could have raised in its response to Defendants' motion for summary judgment or at the Markman hearing. AMS's attempts to raise these matters now is precluded by Rule 59(e). "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" Exxon, 554 U.S. at 486 n.5 (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127–128 (2d ed.1995)). This means that an "argument [that] was raised for the first time in [a] postjudgment Rule 59(e) motion[] . . . cannot be used to advance arguments that could have been raised in prior briefing." Grynberg v. Total S.A., 538 F.3d 1336, 1354 (10th Cir. 2008). Further, "Rule 59(e) cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment" for the purposes of appeal. Steele v. Young, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993). This precedent is largely dispositive of AMS's claims. However, the Court will amend its Order related to the '611 patent on one issue

5

that could not have been addressed by AMS prior to the Court's order. The Court will therefore consider the '611 patent first.

## B. <u>Analysis of the '611 patent</u>

The Court determines that amending one part of its Order on the '611 patent is warranted under Rule 59(e). That issue has to do with the Court's use of the word "event" instead of "message" in one sentence of its Order.

### 1. <u>The Court's use of "event" vs. "message" and the Court's amendment of its Order</u>

AMS criticizes the Court's use of "event" where, according to AMS, the Court should have used the term "message" found in the claim language. (Doc. 168 at 14.) AMS correctly notes that the Court used the term "event," as used by Expert Ruth H. Dameron in her deposition, to refer to what the claim language refers to as a "message." (See <u>id.</u>) In relevant part, the Court stated, "as the BI TAD Processor does not decide what action to apply to an <u>event</u>, a function filled by the BI AutoAlertHandler, the BI TAD Processor does not meet the claim limitation of the '611 patent's situation analyzer." (Doc. 160 at 20 (emphasis added).) As AMS appropriately observes, the claim language in the '611 patent does not use the word "event." (See '611 patent, 16:51-17:18.) The Court acknowledges that it would have been clearer to use the word "message" in this sentence, instead of the word "event," and the Court amends its Order to that effect, so that the sentence reads:

> However, as the BI TAD Processor does not decide what action to apply to a message, a function filled by the BI AutoAlertHandler, the BI TAD

6

Processor does not meet the claim limitation of the '611 patent's situation analyzer.

### 2. AMS's argument that BI System's decision that an "alert condition" exists is an action to be applied

AMS contends that the Court compounded its less-than-optimal word choice by construing "message" to mean only "event" or "alert messages." (Doc. 168 at 14 ("It appears that the Order turns on the assumption that the claimed 'message' can only be the alert message created after processing.").) AMS further asserts that the Court's alleged assumption caused it to conclude that the AMS system required the AMS Situation Analyzer to query historical data for "an action to be applied" only to an "event" and that this conclusion was erroneous. (Id. at 14-15.)

AMS's contention at the Rule 59(e) stage that the Court erred is not persuasive given the arguments made to the Court on summary judgment. The central thrust of Defendants' argument at summary judgment regarding the '611 patent was that "BI does not literally infringe the '611 Patent because the BI TAD system never queries 'historical data' in determining what action to apply to the messages." (Doc. 136 at 18.) From this unopposed assertion, the Court concluded "[s]ummary judgment is appropriate for defendants here because AMS has not show[n] that in the BI system, a 'situation analyzer queries a historical data relating to similar said plurality of messages for an action to be applied.'" Doc. 160 at 19. AMS made no argument on summary judgment, as it does now, that the Court should consider that when the "Situation Analyzer assembles sufficient TAC data messages to determine if elevated TAC readings indicate a drinking event or a false positive," it "is an action applied to the message received." (Doc. 168 at

7

15.) It was not enough for AMS to conclude in its Summary Judgment Response that "therefore, the TAD system necessarily queries and uses historical data to determine whether an alert condition exists," (Doc. 149 at 20), as this does not reference "an action to be applied." AMS's failure to make the argument at summary judgment that the AMS Situation Analyzer's determination of the existence of an alcohol event (or alert message) from other messages is "an action to be applied" means that the Court will not consider this new argument now. Grynberg, 538 F.3d at 1354.

AMS also contends for the first time, citing a new portion of the specification, that data from the monitor device can be broken down into categories including "TAC readings, Tamper data, Communication alerts, etc." and that the existence of a category of TAC readings as distinct from other data supports its contention that when the AMS system makes a determination that an alcohol event exists—from a TAC reading message—this is an "action to be applied." (Doc. 168 at 14 (citing '611 patent, 12:50-13:8).) This argument is new and will not be considered. Grynberg, 538 F.3d at 1354.[3]

---

[3] The Court also determines there is no clear error or manifest injustice in not considering these arguments, because in addition to AMS's ability and failure to bring these arguments at summary judgment, the specification can be interpreted in ways that do not support AMS's arguments. For example, the specification states, "Situation Analyzer can also monitor historical data and escalate the severity of alert messages if there is a pattern emerging in the data that would require more immediate attention," (id. 13:15-18), which can be fairly read to indicate that the Situation Analyzer will be applying actions to "alert messages" received by the Situation Analyzer in a way supportive of Defendants' argument. Additionally, AMS itself, in describing the BI TAD System, used "message" in a way other than the way it now contends the term should be used, when it asserted to the Court that "the 'Central Monitor Network' that is a centralized collection of databases and processors that receives data from the HomeBase, determines when an "event" exists, and sends a notification of the violation message to a predesignated corrections or supervising officer." (Doc. 149 at 6 (emphasis added).)

### 3. The parties' understanding of the issues before the Court affecting the '611 patent

AMS also argues that it did not understand BI's arguments, could not respond to them, and that for this Court to "expect AMS to address an argument beyond what BI expressly stated was its basis for relief is manifestly unfair and violates Due Process." (Doc. 168 at 13.) AMS contends that "neither AMS nor its counsel understood that BI was arguing that infringement was avoided because the 'action to be applied' limitation was not satisfied," i.e. that AMS did not understand that BI was arguing its system never used historical data to determine the action to be applied to messages. (Id. at 12-13.)

The problem, however, is that Defendants clearly argued in their motion for summary judgment that "BI does not literally infringe the '611 Patent because the BI TAD system never queries 'historical data' in determining what action to apply to the messages." (Doc. 136 at 18.) Defendants then discussed their interpretation of the Court's construction of the '611 patent's terms, (id. at 18-19), and concluded that "[a]pplying this construction, the '611 Patent requires that after the Situation Analyzer parses the TAC data into one or more messages, the Situation Analyzer then uses workflow instructions *and 'data relating to prior messages, as opposed to data relating to the message just received by the situation analyzer'* to determine what action to apply to the current message." (Id. at 19 (emphasis in original).) Although this alone should have put AMS on notice that BI was arguing that the Situation Analyzer in the '611 patent was the component applying historical data, Defendants further argued that neither the BI TAD processor, nor the AutoAlertHandler—the two components most closely resembling the

9

Situation Analyzer—applied historical data to messages and thus did not literally infringe the '611 patent. (Id. at 19-20.) The Court found the argument clear enough on summary judgment to put AMS on notice that it should have raised any counterarguments at that stage of the proceeding. The Court concludes the Order fairly evaluated the issues before the parties and did not violate Due Process.

    4.    The Court's use of "parse"

According to AMS, the Order improperly construes "parse" in a restrictive manner. (Doc. 168 at 14.) But AMS's argument regarding use of the term "parse" is not inconsistent with the Order, which did not adopt a restrictive definition of "parse." The Order stated only that the "situation analyzer in the AMS device . . . parses raw data and queries workflow instructions and historical data," (Doc. 160 at 20), and that language did not preclude AMS's definition of "parse" as meaning the function of separating raw data into component parts, such as "TAC readings, Tamper data, Communication alerts, etc." (Doc. 168 at 14.) AMS's use of "parse" in its Summary Judgment Response, used only to describe BI's System, is not different from the Court's use. (Doc. 149 at 6 ("Once the data is received by the Central Monitoring Network, TAC data is first parsed and then processed by the TAD Processor.")) Thus, the Court will not alter its Order as regarding "parse."

    5.    AMS's claim 7 and doctrine of equivalents arguments

Two of AMS's other arguments, that Claim 7 untethered "action to be applied" from the Situation Analyzer and that Defendants infringe on the '611 patent under the

doctrine of equivalents, are both new arguments that AMS could have made at summary judgment. As such, this Court will not consider them. Grynberg, 538 F.3d at 1354.

### 6. AMS's MAD6 arguments

AMS next argues, as it did at summary judgment, that the MAD6 data constitutes "historical data" relied on by the BI System. AMS's argument here merely repeats its argument made at summary judgment. The Court has ruled already on this issue, and Rule 59(e) "may not be used to relitigate old matters." Exxon, 554 U.S. at 486 n.5.

### 7. AMS's final argument is new

AMS's argument that the Defendants infringe based on the sequence of alerts when there is a TAC increase, (Doc. 168 at 19), is new. As discussed, the Court will not consider new argument. Grynberg, 538 F.3d at 1354.

### 8. Conclusion as to '611 patent

The Court concludes that the majority of AMS's arguments and evidence on the '611 patent could have been submitted on summary judgment. Regarding the use of the word "event" instead of "message," the Court acknowledges that it should clarify that its Order should have used the word "message" instead of "event" where it said "as the BI TAD Processor does not decide what action to apply to an event, a function filled by the BI AutoAlertHandler, the BI TAD Processor does not meet the claim limitation of the '611 patent's situation analyzer." The Court will therefore grant AMS's motion for the limited purpose of inserting the word "message" to replace the word "event" in that sentence.

AMS's attempts to portray the Court's less-than-optimal word choice as a reason to further alter or amend its Order are not persuasive. AMS has presented no evidence that it could not have presented at summary judgment, the state of the law has not changed, and the Court did not plainly err based on the arguments made at summary judgment.

### C. Analysis of the '149 patent

#### 1. AMS's request that the Court reconstrue "said first schedule"

AMS alleges in its Motion that "the [Court's] Order construed the term ['first schedule'] in a way that violates fundamental cannons of claim construction and that is incorrect as a matter of law." (Doc. 168 at 4.) In particular, AMS alleges that the Court's construction excludes the preferred embodiment, and that under the Order's construction, dependent claim 14 is broader than claim 1, which violates canons of claim construction. (Id. at 5-6.) The alleged error in construction, however, comes directly from the Court's Markman Order, which "rejected AMS's contention that 'a first schedule could set forth different sub-schedules for the wearer-to-device communication and the device-to-modem communication—in a way that a single train schedule might be said to contain multiple, unique sub-schedules for specific trains'—because such a construction 'lacks a basis in the patent language.'" (Doc. 160 at 9 (quoting Markman Order, Doc. 117 at 17-18).)

AMS thus had ample opportunity to advance its arguments that the preferred embodiment was excluded or that dependent claim 14 precluded the now objected-to construction. AMS declined that opportunity. Although AMS alleges that it "could not

12

have addressed the Court's construction of 'first schedule' before because 'first schedule' was not construed until the Order issued," that argument is belied by the fact that the Order simply repeated its construction from the 18-month-old Markman Order. The Markman Order expressly construed the term, so AMS could have raised these arguments in opposition to summary judgment. AMS's new arguments will not be considered. Grynberg, 538 F.3d at 1354.

    2.    AMS's arguments on the "second schedule" and "predetermined time intervals"

AMS also claims that the Court "misapprehended the evidence submitted by the parties establishing the presence of genuine issues of material fact about whether the BI modem communicates readings to the Host at predetermined time intervals according to the second schedule." (Doc. 168 at 6-7.) Regarding the second schedule, AMS continues, "[a] reasonable juror would conclude that in the computer arts a 'schedule' may refer to a computer program," citing the Microsoft Press Computer Dictionary as read by its expert, Mr. McAlexander. (Id. at 8.) As with its "first schedule" arguments, AMS's new arguments will not be considered. Grynberg, 538 F.3d at 1354.

AMS asserts that the Court's interpretation of "predetermined time intervals" is also erroneous. (Doc. 168 at 8-9.) Once again, though, AMS attempts to introduce evidence from various sources that are not "new," this time accompanied by a conclusory statement from Mr. McAlexander that the Order's conclusion "is not accurate." (Exh. B,

Doc. 167-2, at ¶ 4.) For the reasons discussed above, these arguments will not be considered.[4] Grynberg, 538 F.3d at 1354.

AMS next argues that that the Court "misapprehends the facts related to the communication from the Modem to the Host." (Doc. 168 at 9.) AMS contends that the time intervals for each communication with modem and host do not vary, even though establishing different links between modem and host might have a variable time, and that these communication time intervals are therefore predetermined. This new argument will not be considered for the same reasons discussed above. Grynberg, 538 F.3d at 1354.[5]

AMS's final argument on the '149 patent, about BI System's "periodic callback attempts" (Doc. 168 at 10-11), is new and could have been brought before the Court at summary judgment. For the same reasons discussed above, the Court will not consider this argument. Grynberg, 538 F.3d at 1354.

### 3.  Conclusion as to the '149 patent

The Court concludes that AMS's arguments on the '149 patent are new arguments based on evidence available to the parties at summary judgment, are not based on

---

[4] The Court is also confused about AMS's citations to its exhibits, as the additional deposition in Exhibit B, (Doc. 167-2), only contains five paragraphs, yet AMS cites to Exhibit B ¶¶ 8 and 9.

[5] The Court also finds no clear error in its Order on this matter. AMS has not presented evidence showing that the Court "misapprehended" AMS's failure to show that the BI System Modem and Host communicate at predetermined time intervals. Any communication must encompass both the time to "establish the next link in communication" and the time to actually complete the communication. Thus, when various transdermal and other data "are communicated," as required by the AMS '149 patent, it necessarily includes the variable time for establishment of the links of commination and is not a predetermined time interval. (See '149 patent 17:4-9.)

14

changes in the law, and do not show clear error or manifest injustice. The Court will therefore not alter or amend its judgment regarding the '149 patent.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part plaintiff's Motion to Alter or Amend Pursuant to Fed. R. Civ. P. 59(e).  It is so ORDERED.

DATED this 15th day of July, 2014.

BY THE COURT:

*s/ David M. Ebel*

_____
U.S. CIRCUIT JUDGE